UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RICK WELLS, JUDY HUMES, and VERN SMITH, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO. 1:10-CV-70 ) |
| EMF CORP., | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiffs Rick Wells, Judy Humes, and Vern Smith bring this suit against their former employer, Defendant EMF Corp., under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.[1] (Docket # 1.) Plaintiffs assert that EMF discriminated against them due to their age when it terminated their employment in a purported reduction in force ("RIF").

On August 24, 2010, EMF moved for summary judgment on Plaintiffs' claims. (Docket # 18.) Plaintiffs belatedly responded on September 27, 2010 (Docket # 23), and EMF replied on October 4, 2010 (Docket # 31). Also pending is a motion to strike filed by EMF, seeking to strike Plaintiffs' untimely response to the summary judgment motion, as well as certain evidence Plaintiffs produced with their response. (Docket # 28.) Plaintiffs responded to EMF's motion to strike on October 18, 2010 (Docket # 34), and EMF replied on October 28, 2010 (Docket # 37).

In turn, on October 18, 2010, Plaintiffs filed motions to (1) strike certain evidence EMF

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

submitted in support of its summary judgment motion (Docket # 33); (2) amend their admissions (Docket # 35); and (3) amend their response brief to the summary judgment motion (Docket # 32). EMF responded to the first two motions on October 28, 2010 (Docket # 38, 39); Plaintiffs, however, failed to reply, and the time to do so has since passed. EMF did not file a response to Plaintiffs' motion to amend their response brief to the summary judgment motion, and the time to do so has also expired.

Because EMF's motion for summary judgment is affected, at least in part, by the motions to strike and motions to amend, the Court will first turn to those motions. For the reasons provided, Plaintiffs' motion to amend admissions will be GRANTED, but their motion to strike and motion to amend response brief will be DENIED. EMF's motion to strike will be GRANTED, and its motion for summary judgment will be GRANTED with respect to Wells and Smith but DENIED as to Humes.

## II. PLAINTIFFS' MOTION TO AMEND ADMISSIONS

### A. Background

EMF served its first set of discovery requests, which includes interrogatories, document requests, and requests for admissions, to Plaintiffs on June 8, 2010. (Bartrom Aff. ¶ 2, Ex. A.) The responses to the discovery were due on July 12, 2010, but Plaintiffs failed to meet this deadline. (Bartrom Aff. ¶ 3, Ex. A.)

On August 2, 2010, EMF sent a letter to Plaintiffs inquiring about the status of the overdue discovery responses. (Bartrom Aff. ¶ 4, Ex. B.) Plaintiffs' counsel responded via letter two days later and requested a 45-day extension, explaining that she had yet to begin drafting the responses because she had misplaced the documents. (Bartrom Aff. ¶ 5, Ex. C.) On August 9,

2

2010, EMF, by letter, provided Plaintiffs with a 21-day extension with respect to the interrogatories and document requests; it did not, however, provide an extension for the requests for admission. (Bartrom Aff. ¶ 6, Ex. D.)

On August 13, 2010, EMF sent a letter to Plaintiffs stating that the time for them to respond to the requests for admission had passed and that EMF deemed those requests to be admitted by operation of law. (Bartrom Aff. ¶ 7, Ex. E.) It also informed Plaintiffs that it would soon be filing a motion for summary judgment. (Bartrom Aff. ¶ 7, Ex. E.) Plaintiffs did not respond to EMF's August 13th letter, and on August 24, 2010, EMF filed its motion for summary judgment. (Docket # 18.)

On September 27, 2010, Plaintiffs belatedly filed their response to EMF's summary judgment motion, together with their discovery responses. (Docket # 22-25.) On October 18, 2010, Plaintiffs moved to amend the deemed admissions. (Docket # 35.)

### B. Applicable Law

Federal Rule of Civil Procedure 36 states that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of [Federal Rule of Civil Procedure] 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." It further provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).

"A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b); *see*

3

*Matthews v. Homecoming Fin. Network*, No. 03 C 3115, 2006 WL 2088194, at *1 (N.D. Ill. July 20, 2006); *Decor Grates, Inc. v. Fararo*, No. 92 C 6395, 1997 WL 399646, at *1 (N.D. Ill. July 11, 1997).

"[T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b); *Vanhoose v. Nucor Corp.*, No. 1:06-cv-01565-WTL-LJM, 2007 WL 2898697, at *1 (S.D. Ind. Apr. 13, 2007); *Matthews*, 2006 WL 2088194, at *1; *Decor Grates*, 1997 WL 399646, at *1.

### C. Discussion

By failing to timely respond, Plaintiffs have technically admitted every allegation set forth in EMF's requests for admission. Wishing to avoid this result, Plaintiffs seek to withdraw all such admissions and amend their responses in the form as attached to their response brief.

As articulated above, "the court may, in its discretion, permit a withdrawal if (1) preserving the admission would effectively eliminate any presentation of the merits of the case, and (2) the party who obtained the admission will not be prejudiced by a withdrawal or amendment." *Decor Grates*, 1997 WL 399646, at *1; *see also Matthews*, 2006 WL 2088194, at *2. Here, the requests for admission ask each Plaintiff to admit that the employee(s) who assumed his or her job duties are older than Plaintiff, which essentially negates one of the elements of a *prima facie* case of age discrimination. Therefore, it is fairly obvious that allowing Plaintiffs to withdraw the admissions will promote the presentation of the merits of this action, and thus the first prong of the two-part test in Rule 36(b) is satisfied. *See, e.g.*, *Vanhoose*, 2007 WL 2898697, at *1; *Decor Grates*, 1997 WL 399646, at *1.

4

As for the second prong, EMF has not demonstrated that it will be prejudiced if the admissions are withdrawn. "Having to prove one's case on the merits is not the type of prejudice that satisfies Rule 36(b)." *Vanhoose*, 2007 WL 2898697, at *1. That is, a defendant must show that it "will be prejudiced in maintaining the action . . . on the merits, not simply because [it] will now be required to maintain the action on the merits." *Id.* (emphasis and internal quotation marks omitted); *see Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1266 (11th Cir. 2002) ("The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of a sudden need to obtain evidence with respect to the questions previously answered by the admission."); *Matthews*, 2006 WL 2088194, at *3 ("[Prejudice] does not simply mean that the party who obtained the admissions will now have to argue the merits of the case. Rather, the prejudice must be based on the party's detrimental reliance on such admissions.").

Here, EMF has not alleged, much less established, that it will be prejudiced by the withdrawal of the admissions. Nor is any prejudice apparent in the record, as discovery is open through February 11, 2011. (*See* Docket # 16.) Consequently, Plaintiffs' motion to amend admissions will be GRANTED.

### III. PLAINTIFFS' MOTION TO AMEND RESPONSE BRIEF AND EMF'S MOTION TO STRIKE PLAINTIFFS' RESPONSE BRIEF

EMF seeks to strike Plaintiffs' response brief to the summary judgment motion, together with its supporting appendix, arguing that it is untimely, procedurally and substantively deficient, and incorporates inadmissible evidence. (Docket # 28.) Plaintiffs, however, contend that their response was timely filed and seek leave to amend it to correct some of the purported

5

procedural and substantive deficiencies. (Docket # 34.)

Contrary to their assertion, Plaintiffs' response brief was untimely. EMF filed its motion for summary judgment on August 24, 2010. (Docket # 18.) Under Local Rule 56.1(a), Plaintiffs had twenty-eight days within which to file a response, plus three additional days for electronic delivery. *See* Fed. R. Civ. P. 6(a), (d), 5(b)(2)(E). Therefore, Plaintiffs' response was due on Friday, September 24, 2010. Plaintiffs did not file their response until Monday, September 27, 2010, believing, albeit mistakenly, that they had thirty days, rather than twenty-eight days, under Local Rule 56.1(a) to respond.

Of course, "[u]nder Federal Rule of Civil Procedure 6(b), on a party's motion the court can extend the time for filing a reply after a deadline has expired if the party failed to act because of excusable neglect." *Goodman v. Clark*, No. 2:09 CV 355, 2010 WL 2838396, at *2 (N.D. Ind. July 12, 2010) (internal quotation marks omitted). Here, however, Plaintiffs *have not sought such relief* under Rule 6(b). *See Anderson v. LaSalle Steel Co.*, No. 2:07 cv 169, 2009 WL 857511, at *6 (N.D. Ind. Mar. 31, 2009) ("First, the moving party must demonstrate that his failure to meet the deadline was because of neglect. . . . Second the moving party must establish that his failure to act was excusable."). In any event, the Seventh Circuit Court of Appeals has articulated that, at least in the context of a deadline for filing an appeal, "simple miscalculation [of deadlines] is not excusable neglect." *Marquez v. Mineta*, 424 F.3d 539, 541 (7th Cir. 2005).

Furthermore, Plaintiffs' proposed amended response brief, which is just over three pages in length, fails to include in accordance with Local Rule 56.1(a) a "'Statement of Genuine Issues,' setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence all material facts as to which it is contended there exists a genuine

6

issue necessary to be litigated." In fact, Plaintiffs' response brief contains *not a single citation* to the discovery responses submitted with it. Therefore, Plaintiffs' attempt to remedy the various deficits in their brief *still* falls short.

In sum, Plaintiffs' response brief is untimely, they do not seek to extend the deadline under Rule 6(b) due to excusable neglect, and even their proposed amended brief would not cure the deficiencies under Local Rule 56.1(a). As a result, EMF's motion to strike will be GRANTED, and Plaintiffs' motion to amend response brief will be DENIED.[2]

## IV. PLAINTIFFS' MOTION TO STRIKE

In turn, Plaintiffs seek to strike certain evidence EMF filed in support of its motion for summary judgment. (Docket # 33.) Specifically, Plaintiffs seek to strike (1) the Employee Termination Reports attached to the Affidavit of Howard Sanders because the Reports contain their social security numbers; and (2) certain correspondence between the parties referencing settlement negotiations, which Plaintiffs claim is inadmissible under Federal Rule of Evidence 408.

Indeed, Federal Rule of Civil Procedure 5.2(a) states that the social security numbers of parties and non-parties should be redacted to include only the final four digits. However, Rule 5.2(h) further provides that "[a] person waives the protection of Rule 5.2(a) as to the person's own information by filing it without redaction and not under seal." As EMF emphasizes, the Termination Reports that Plaintiffs seek to strike from Sanders's Affidavit were already filed by Plaintiffs as an attachment to their complaint. (*Compare* Sanders Aff. Exs. A-C, *with* Docket #

---

[2] In any event, even if Plaintiffs' cursory response brief was not stricken, the Court's ruling would remain the same. In the response brief (Docket # 23, 32), Plaintiffs cite only to evidence submitted by EMF and spend much of the three-pages arguing that its admissions should be amended—relief that the Court does indeed ultimately afford to Plaintiffs.

1.) Thus, Plaintiffs have waived the protection of Rule 5.2(a) with respect to their social security numbers, and consequently the Reports will not be stricken from Sanders's Affidavit.

As to the correspondence between the parties referencing settlement negotiations, it too will survive. EMF emphasizes that it discloses these documents not to prove liability, but to demonstrate Plaintiffs' purported pattern of untimely submissions in this case. Indeed, proving a pattern of untimely submissions is not a prohibited use of settlement negotiations under Federal Rule of Evidence 408. *See, e.g.*, *21 SRL v. Newegg Inc.*, No. 09-cv-6590, 2010 WL 1178066, at *4 n.3 (N.D. Ill. Mar. 24, 2010) (admitting settlement correspondence to show that no settlement discussions occurred). Therefore, Plaintiffs' motion to strike will be DENIED in its entirety.

Having now disposed of the parties' respective motions to strike and the motions to amend, the Court will turn to EMF's motion for summary judgment.

## V. EMF'S MOTION FOR SUMMARY JUDGMENT

### A. Factual Background[3]

EMF is a small business headquartered in Angola, Indiana, with manufacturing facilities in Indiana, Kentucky, and Mississippi. (Sanders Aff. ¶ 3.) It manufactures custom wiring harnesses, fluorescent lampholders, and specialty molded connectors for a variety of industries, including appliance, vending, refrigeration, lighting, motors, controls, air conditioning, heating, and automotive. (Sanders Aff. ¶ 3.)

In 2007, EMF began to experience dire economic circumstances, and it closed one of its Mississippi plants by the end of the year. (Sanders Aff. ¶¶ 5, 6.) From 2007 to 2008, EMF lost

---

[3] Because Plaintiffs did not submit a factual statement called for by Local Rule 56.1, they have conceded EMF's version of the facts as set forth in its memorandum supporting summary judgment. *See* N.D. Ind. L.R. 56.1(b); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

$1,000,000 in business, and from 2008 to 2009, an additional $4,000,000 in business. (Sanders Aff. ¶ 6.) In 2009, EMF lost a major automotive client that accounted for approximately 13% of its total sales. (Sanders Aff. ¶ 6.)

As a result, beginning in 2007, EMF significantly scaled back its manufacturing and office operations by downsizing approximately 120 employees through a company-wide RIF. (Sanders Aff. ¶¶ 5, 7.) EMF restructured its office staff as a result of the reduction in the number of manufacturing employees it supported and the decline in business. (Sanders Aff. ¶ 7.) The RIF included employees of all ages. (Sanders Aff. ¶ 7.) In fact, approximately 57% of the downsized employees were under 40 years old. (Sanders Aff. ¶ 8.) Conversely, 77% of the employees who remained employed after the downsizing were over 40 years old. (Sanders Aff. ¶ 8.)

Plaintiff Rick Wells, Purchasing Manager, was hired by EMF in April 1986 and was terminated on September 29, 2008, "due to a down turn in business." (Sanders Aff. ¶ 9, Ex. A.) He was 58 years old at the time of his termination. (Sanders Aff. ¶ 9.) EMF's "Employee Termination Report" reflected that it would rehire Wells and would recommend him "without reservation". (Sanders Aff. Ex. A.) An evaluation on the Termination Report indicated that EMF rated Wells's performance as "good" in all categories. (Sanders Aff. Ex. A.) Following his discharge, Wells's job duties were absorbed by Buyer David Daughtery, who was 41 years old, and IT Manager Kane Pyley, who was 51 years old. (Sanders Aff. ¶ 10.)

Plaintiff Vern Smith, Plant Manager, was hired by EMF in April 1992 and was terminated in October 2008 "due to a down turn in business." (Sanders Aff. ¶ 13, Ex. C.) Smith was 61 years old at the time of his termination. (Sanders Aff. ¶ 13.) EMF offered Smith a

similar job at EMF's Mississippi facility in lieu of termination. (Sanders Aff. ¶ 15.) The job would have allowed Smith to work part of the year in Mississippi and part of the year in Indiana, and EMF would have paid his travel expenses. (Sanders Aff. ¶ 15.) Smith rejected EMF's offer. (Sanders Aff. ¶ 15.) EMF's "Employee Termination Report" stated that it would not rehire Smith. (Sanders Aff. Ex. C.) An evaluation on the Termination Report indicated that EMF rated Smith's performance as "good" in attendance, job knowledge, and quality of work; "fair" in cooperation; and "satisfactory" in initiative. (Sanders Aff. Ex. C.) Following his discharge, Smith's job duties were absorbed by Manager Judy Hicks, who was 52 years old, and Vice President Howard Sanders, who was 62 years old. (Sanders Aff. ¶ 14.)

Plaintiff Judy Humes, Plant Clerk, was hired by EMF in January 1983 and was terminated on October 10, 2008, "due to a down turn in business." (Sanders Aff. ¶ 11, Ex. B.) She was 62 years old at the time of her termination. (Sanders Aff. ¶ 11.) EMF's "Employee Termination Report" stated that it would rehire Humes and would recommend her "without reservation." (Sanders Aff. Ex. B.) An evaluation on the Termination Report indicated that EMF rated Humes's performance as "good" in all categories. (Sanders Aff. Ex. B.) Following her discharge, Humes's job duties were absorbed by Quality Coordinator Tami Kipfer, who was 50 years old. (Sanders Aff. ¶ 12.)

Plaintiffs filed the instant suit under the ADEA on March 9, 2010, alleging that EMF discriminated against them on the basis of their age when it terminated their employment. (Docket # 1.)

### B. Standard of Review

Summary judgment may be granted only if there are no disputed genuine issues of

material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### C. Discussion

#### 1. Applicable Law

The ADEA "prohibits employers from firing workers who are 40 or older on the basis of their age." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). A plaintiff suing under the ADEA may establish discrimination directly or indirectly, the latter through the approach used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Plaintiffs advance their claims solely under the indirect method.

Generally, to establish a *prima facie* case of age discrimination under the indirect method in a traditional RIF, a plaintiff must show that: (1) he is 40 or older, (2) his performance met the company's legitimate expectations, (3) despite his performance he was subject to an adverse

employment action, and (4) the company treated similarly situated employees outside of the protected class more favorably. *Martino*, 574 F.3d at 453; *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003). If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802; *Martino*, 574 F.3d at 453. Once the defendant has done so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Martino*, 574 F.3d at 453.

The Seventh Circuit Court of Appeals, however, has "long recognized that the [*McDonnell Douglas*] test is not inflexible and is appropriately adapted where necessary to reflect more fairly and accurately the underlying reality of the workplace." *Merillat v. Metal Spinners, Inc*., 470 F.3d 685, 690 (7th Cir. 2006) (citation and internal quotation marks omitted). Accordingly, in a RIF "where the dismissed employee's duties are absorbed by another employee or employees rather than eliminated," the Seventh Circuit has applied a modified version of the fourth prong of the *McDonnell Douglas* test, referring to it as the "mini-RIF variation". *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 725 (7th Cir. 2008). Under this variation, a plaintiff must establish as the fourth prong of the test that his "duties were absorbed by employees not in the protected classes." *Merillat*, 470 F.3d at 690; *see Filar v. Bd. of Educ. of the City of Chicago*, 526 F.3d 1054, 1060 (7th Cir. 2008) ("[T]he prima facie case in this context swaps the fourth requirement in the basic framework—that a similarly situated younger employee was treated more favorably—with another—that [his] duties were absorbed by younger workers who were retained following the mini-RIF.").

The Seventh Circuit has "explained that the determinative factor in deciding whether the mini-RIF variation applies is whether the discharged employee's duties were absorbed by an existing employee or eliminated, not the number of employees let go." *Petts*, 534 F.3d at 725 (citing *Merillat*, 470 F.3d at 690 n.1; *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1011 n.5 (7th Cir. 2000)). That is, "the relevant factual inquiry in a reduction-in-force case is not the same as a mini-RIF case." *Filar*, 526 F.3d at 1060. "In the former, a plaintiff's position was eliminated entirely and will not be refilled whereas the point of a mini-RIF unlike a true RIF, is that the job really was not eliminated at all; because the fired employee's duties were absorbed by others, they were effectively replaced, not eliminated." *Filar*, 526 F.3d at 1060 (internal quotation marks omitted) (citing *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000)); *see Michas v. Health Cost Controls of Ill., Inc*., 209 F.3d 687, 693-94 (7th Cir. 2000) ("In both the traditional *McDonnell Douglas* analysis and the mini-RIF analysis, the discharged employee's duties are assumed by other employees (or in the mini-RIF scenario, the position is absorbed by other employees); in the RIF context, the employer no longer needs the discharged employee's duties performed."); *Paluck*, 221 F.3d at 1011 n.5 ("When a terminated employee's duties were absorbed by other employees, rather than eliminated from the company altogether, we do not require the former employee plaintiff to make out the prima facie case normally required for reduction in force cases.").

2. **Analysis**

Here, EMF makes two missteps when arguing its motion for summary judgment. First, although it admits that Plaintiffs' job duties were absorbed by other employees, it applies the traditional RIF *McDonnell Douglas* test rather than the mini-RIF variation. Second, EMF for the

13

most part fails to acknowledge that even though each Plaintiff's job duties were absorbed by an employee(s) over 40 years old, age discrimination may still occur if the employee who absorbed the duties is "substantially younger" than Plaintiff. *See Balderston*, 328 F.3d at 321-22 ("In the age discrimination context, the fact that a plaintiff is replaced by someone 'substantially younger' is a reliable indicator of age discrimination."). "The Seventh Circuit has defined 'substantially younger' as generally ten years younger." *Id.*; *see also Tubergen v. St. Vincent Hosp. & Health Care Ctr.*, 517 F.3d 470, 475 n.4 (7th Cir. 2008) ("Under the ADEA, in the case of younger employees that fall above the age of forty, the age difference must be ten years or greater in order to be presumptively substantial.").

Having highlighted these key points, the Court will now analyze each Plaintiff's claim in turn. When applying the more appropriate mini-RIF test and including those employees "substantially younger" than each Plaintiff in the analysis, only Humes's age discrimination claim will survive summary judgment.

### a. Rick Wells

Wells easily satisfies the first three prongs of his *prima facie* case. He was 58 years old when he was terminated from his position as Purchase Manager, and EMF reflected on his Termination Report that his performance was "good" and that it would rehire him and recommend him "without reservation".

Wells, however, falters at the fourth prong. The record represents that Wells's job duties were absorbed by Daughtery, who was 41 years old, and Pylely, who was 51 years old—thus only one of the two employees who absorbed Wells's job duties was "substantially younger" than Wells. *Balderston*, 328 F.3d at 321-22. The record is silent as to how Wells's duties were

allocated between the two employees.

To satisfy the fourth prong of his *prima facie* case, Wells "must show that [his] duties, at the very least, were absorbed *mostly* by employees not in [his] protected class." *Knowles v. Trans Union LLC*, No. 03 C 4952, 2005 WL 3159363, at *10 (N.D. Ill. Nov. 21, 2005) (emphasis added) (citing *Bellaver*, 200 F.3d at 495); *see also Bartlett v. NIBCO Inc.*, No. 3:08-CV-597 PPS, 2010 WL 1779887, at *8 (N.D. Ind. Apr. 28, 2010) ("[W]hether [plaintiff] can establish a *prima facie* case for . . . discrimination as to her termination comes down to whether *most of her duties* were absorbed by employees not in the protected class.") (collecting cases); *Vonckx v. Allstate Ins. Co.*, 2004 WL 1427105, at *13 (N.D. Ill. June 23, 2004) ("Caselaw indicates that [p]laintiff must do more than merely show that younger employees absorbed *any* of his duties. Instead, it appears that [p]laintiff must show that his duties, at the least, were absorbed *mostly* by younger employees."); *Kazhinksy v. William W. Meyer & Sons, Inc.*, No. 02 C 7254, 2003 WL 22735867, at *5 (N.D. Ill. Nov. 19, 2003) (explaining that because half of the individuals who assumed plaintiff's job duties were in the protected class, she could not show that her duties were assumed "solely or even primarily" by employees outside the protected class); *Hamilton v. Nat'l Propane*, 276 F. Supp. 2d 934, 946 (W.D. Wis. 2002) ("At minimum, case law indicates that plaintiff's duties need to be absorbed mostly by substantially younger employees, not entirely."). Here, Wells fails to make such showing, which rings the death knell for his claim. *See, e.g.*, *Bartlett*, 2010 WL 1779887, at *9 (granting summary judgment where the record indicated that plaintiff's job duties were absorbed by two employees, one of whom was "substantially younger" than plaintiff, but was silent as to the allocation of the work between the two).

In short, "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citation omitted). Because Wells does not to show that his job duties were absorbed mostly by "substantially younger" employees, he fails to establish his prima facie case of age discrimination, and thus summary judgment is warranted in EMF's favor.[4]

### b. <u>Vern Smith</u>

Smith easily satisfies the first and third prongs of his *prima facie* case, as he was 61 years old at the time he was terminated from his position as a Plant Manager. His *prima facie* case, however, falters on the second and fourth prongs.

First, the record is not particularly persuasive that Smith's performance met EMF's legitimate expectations. EMF stated on his Termination Report that it would not rehire him and, while it rated his performance as "good" in three areas, it perceived his cooperation as "fair" and his initiative "satisfactory".

In any event, Smith cannot establish the fourth prong of his *prima facie* case. The record reflects that his job duties were absorbed by Hicks, who was 52 years old, and Sanders, who was 62 years old. Thus, neither of the two employees who absorbed Smiths's job duties were "substantially younger" than Smith, which is fatal to his claim.[5] *Balderston*, 328 F.3d at 321-22.

---

[4] Notably, Wells's claim would fare no better under the traditional RIF test, which requires that a plaintiff establish as the fourth prong that "similarly situated employees outside the protected class were treated more favorably." *Balderston*, 328 F.3d at 322. In that respect, Wells has presented *no* evidence that a substantially younger employee "similarly situated with respect to [his] qualifications, experience, skills, or abilities" was treated more favorably. *Id.*; *see Filar*, 526 at 1061 ("[T]he comparator must . . . be similar enough to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, [so as to] isolate the critical independent variable: . . . discrimination." (internal quotation marks and citation omitted)).

[5] "Where a plaintiff 'just misses the 10-year mark,' he must present evidence that the employer 'considered age to be a significant factor.'" *Majewski v. Schindler Elevator Corp.*, No. 07 C 276, 2008 WL 4367333, at *3 (N.D. Ill. Mar. 19, 2008) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000)). Although Hicks is

Therefore, because Smith cannot establish a *prima facie* case of age discrimination, his claim will not survive summary judgment.[6]

### c. **Judy Humes**

In contrast to Wells and Smith, Humes easily establishes a *prima facie* case of age discrimination. She was 62 years old when EMF terminated her from the Plant Clerk position; EMF reflected on her Termination Report that her performance was "good" and that it would rehire her and recommend her "without reservation"; and her duties were absorbed by Kipfer, who at 50 years old was "substantially younger" than Humes. *Balderston*, 328 F.3d at 321-22.

Since Humes successfully establishes a *prima facie* case, the burden of production then shifts to EMF to provide a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802; *Martino*, 574 F.3d at 453. EMF states that it terminated Humes as part of a company-wide reduction in force "due to a down turn in business." (Sanders Aff. Ex. B.) Of course, generally speaking, "[a]n economic downturn in the industry is a legitimate, non-discriminatory reason for a reduction in force." *Owens v. Teleperformance USA*, No. 04 C 3645, 2009 WL 3719411, at *6 N.D. Ill. 2009) (citing *Ritter v. Hill'N Dale Farm, Inc.*, 231 F.3d 1039, 1043-44 (7th Cir. 2000)).

Significantly, however, the record is devoid of any reason *why* EMF included Humes in the purported RIF. *See Paluck*, 221 F.3d at 1012-13 ("Even if the reduction was otherwise bona fide, a plaintiff may show pretext by demonstrating that *the specific reasons given for including*

---

nine years younger than Smith and thus comes close to the ten-year mark, Smith has presented no evidence that age was a factor in his termination. *Id*.

[6] Like Wells, Smith's claim would fail even if the traditional RIF test was applied, as Smith has presented no evidence that a substantially younger employee "similarly situated with respect to [his] qualifications, experience, skills, or abilities" was treated more favorably. *Balderston*, 328 F.3d at 321-22.

17

*her in the reduction* were pretextual.") (emphasis added). Moreover, no legitimate reasons are apparent in the record, as Humes demonstrated "good" performance and obviously had significant seniority since she had been employed at EMF for 25 years. *Cf. Petts*, 534 F.3d at 726 (finding that defendant had offered a legitimate reason for plaintiff's discharge where it explained why it chose to eliminate plaintiff in the RIF rather than another employee); *Filar*, 526 F.3d at 1063 (same); *Merillat*, 470 F.3d at 692-93 (same); *Ritter*, 231 F.3d at 1043-44 (same); *Miller v. Borden, Inc.*, 168 F.3d 308, 314 (7th Cir. 1999) (same); *Colabuono v. Tr-Star Cabinet & Top Co.*, No. 09 CV 1961, 2010 WL 3700840, at *5 (N.D. Ill. Sept. 8, 2010) (same); *Majewski*, 2008 WL 4367333, at *4 (same); *Raymond v. Ameritech Corp.*, No. 03 C 4509, 2005 WL 525421, at *8 (N.D. Ill. Mar. 4, 2005) (same); *Townsend v. Weyerhaeuser Co.*, No. 04-C-563-C, 2005 WL 1389197, at *11 (W.D. Wis. June 13, 2005) (same); *Williams v. Roman, Inc.*, No. 04 C 3902, 2005 WL 3019395, at *8 (N.D. Ill. Nov. 10, 2005) (same); *Vonckx*, 2004 WL 1427105, at *16 (same); *Michas v. Health Cost Controls of Ill, Inc.*, No. 96 C 5104, 1999 WL 258457, at *4 (N.D. Ill. Apr. 19, 1999) (same); *Morris v. Northrop Gumman Corp.*, No. 92C8305, 1996 WL 145913, at *4-5 (N.D. Ill. Mar. 27. 1996) (same); *Tipsword v. Ogilvy & Mather, Inc.*, 918 F. Supp. 217, 221-22 (N.D. Ill. 1996) (same).

In short, on this record EMF has not presented a legitimate, non-discriminatory reason for terminating Humes—an employee who undisputably had good performance and significant seniority—in the purported RIF. As a result, EMF's motion for summary judgment with respect to Humes will be DENIED.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket # 18) is

GRANTED with respect to Plaintiffs Rick Wells and Vern Smith but DENIED as to Plaintiff Judy Humes.[7] Defendant's motion to strike (Docket # 28) is GRANTED. Plaintiffs' motion to strike (Docket # 33) and motion to amend response brief (Docket # 32) are both DENIED, but their motion to amend admissions (Docket # 35) is GRANTED.

SO ORDERED.

Enter for the 1st day of December, 2010.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[7] The Court realizes that Defendant's motion for summary judgment was filed well in advance of the dispositive motion deadline, primarily as a result of Plaintiffs' non-responsiveness to its request for admissions. Accordingly, Defendant is GRANTED leave to file a second motion for summary judgment with respect to Humes's claim on or before March 11, 2011. (*See* Docket # 16.)