| | |
|---|---|
| **JUDY HUMES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CAUSE NO. 1:10-CV-00070** |
| | ) |
| **EMF CORP.,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Judy Humes, Rick Wells, and Vern Smith filed this suit against their former employer, Defendant EMF Corp., under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., asserting that EMF discriminated against them due to their age when it terminated their employment in a purported reduction in force ("RIF").[1] (Docket # 1.)  On December 1, 2010, the Court granted EMF's first motion for summary judgment in part and dismissed Wells's and Smith's claims. (Docket # 40.)  Humes's age discrimination claim, however, survived the summary judgment motion because, after Humes established a *prima facie* case, EMF failed to produce a legitimate, non-discriminatory reason for including her in the RIF. (Docket # 40.)

Since EMF filed its first summary judgment motion well in advance of the dispositive motion deadline, the Court granted EMF leave to file a second motion for summary judgment pertaining to Humes's age discrimination claim. (Docket # 40.)  Now before the Court is EMF's

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (*See* Docket # 15.)

second motion for summary judgment and corresponding motion to strike, seeking to dispose of Humes's claim. (Docket # 46, 55.)  The motions are both fully briefed. (Docket # 47-51, 53-54, 56-59.)

Because Humes's opposition to the motion for summary judgment relies upon evidence subject to EMF's motion to strike, the Court will first turn to that motion.  For the following reasons, EMF's motion to strike will be GRANTED IN PART and DENIED IN PART, and its motion for summary judgment will be GRANTED.

## I.  MOTION TO STRIKE

### A.  Applicable Law

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.*, No. 2:04-cv-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

"[W]hen considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Id.*; *see also Stromsen v. Alumna Shield Indus., Inc.*, No. 89-C5036, 1993 WL 34727, at *4 (N.D. Ill. Feb. 8, 1993); *Toro Co. v. Krouse, Kern & Co.*, 644 F. Supp. 986, 989 (N.D. Ind. 1986); CHARLES ALAN WRIGHT, ET AL., FEDERAL

PRACTICE & PROCEDURE § 2738 (3d ed. 2006).  Specifically, the following statements are not properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) self-serving statements without factual support in the record, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); (4) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); (5) mere speculation or conjecture, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999), and (6) statements or conclusions that "contradict prior deposition or other sworn testimony", without explaining the contradiction or attempting to resolve the disparity, *see Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (collecting cases); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985).

## B.  Analysis

In its motion to strike, EMF seeks to strike portions of Humes's Affidavit, portions of the Affidavits of four other former employees, and Humes's exhibit offering her attorney's mathematical analysis of EMF's income statements.  For the following reasons, EMF's motion will be granted in part and denied in part.

1.  Humes's Affidavit.

a.  Paragraph 2. EMF seeks to strike as immaterial the second paragraph of Humes's Affidavit, which states that in 2008 she and her husband filed more than fifty claims for benefits with EMF's health insurance plan.  Generally, an employer's attempt to reduce operating costs through cutting salary or benefit expenses is a legitimate, nondiscriminatory justification for

terminating employees, provided it is not simply a proxy for age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 613 (1993). Here, Humes offers her medical claims experience as an arguable attempt to establish that EMF used medical costs synonymously with age. Because EMF's argument ultimately goes to the weight and not the admissibility of this evidence, however, *see, e.g.*, *Dority v. City of Chicago*, No. 98 C 4893, 2001 WL 1155286, at *3 (N.D. Ill. Sept. 28, 2001), its motion to strike is DENIED concerning this paragraph.

b. Paragraph 5. Humes states in this paragraph that upon her information and belief, her employment file was removed from EMF shortly after she filed an EEOC charge. EMF seeks to strike this paragraph because it is not based upon Humes's personal knowledge but rather upon her "information and belief." Indeed, Federal Rule of Civil Procedure 56(c)(4) provides that affidavits "must be made on personal knowledge"; therefore, "[a]ffidavits based on 'information and belief'—facts that the affiant believes are true, but which the affiant does not know are true—are not proper." *Abdullah v. Frank*, No. 04C1181, 2007 WL 636185, at *5 (E.D. Wis. Feb. 26, 2007) (citing *Toro*, 827 F.2d at 162-63; *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987)); *see also Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000) (noting that an affidavit that stated various facts "on information and belief" was not enough to satisfy the personal knowledge requirement). Therefore, the motion to strike is GRANTED with respect to paragraph 5.

c. Paragraph 7. Here, Humes states that at no time during her employment did Tami Kipfer, the substantially younger employee who absorbed her duties, "oversee" or "supervise" her work. EMF seeks to strike this statement, arguing that it contradicts Humes's deposition

4

testimony concerning Kipfer's coordination of the ISO-9000 Program[2] in which Humes admitted that Kipfer would "tell [her] what things had to be done [and] . . . didn't have to be done." (Humes Dep. 37.)  EMF's motion is DENIED, as Humes's statement in her Affidavit concerning supervision or oversight does not necessarily contradict her deposition testimony about her communications with Kipfer pertaining to the ISO-9000 Program tasks. *See, e.g.*, *DeCalonne v. G.I. Consultants, Inc.*, 197 F. Supp. 2d 1126, 1138 (N.D. Ind. 2002) (acknowledging that a party cannot create an issue of fact merely by submitting an affidavit that contradicts an earlier deposition, but denying the motion to strike because there was no actual conflict between plaintiff's affidavit and deposition testimony); *see generally Osborn v. Consol. Rail Corp*., No. 3:05CV161CAN, 2006 WL 37016, at *2 (N.D. Ind. Jan. 4, 2006) (denying motion to strike plaintiff's affidavit that appeared inconsistent with his deposition testimony, stating that the court "may simply disregard the inconsistent statements in the affidavit without striking otherwise admissible evidence").

      d.  <u>Paragraph 8</u>.  Humes states in this paragraph that upon her information and belief Kipfer never held a "management" position with EMF.  As discussed with respect to paragraph 5, an affidavit may not be made on "information and belief", and EMF's motion to strike this evidence is therefore GRANTED.

      e.  <u>Paragraph 9</u>.  EMF's motion to strike the first sentence of paragraph 9, which states that upon her information and belief Kipfer never held the position of "Plant Clerk" at EMF's Angola facility, is also GRANTED for the reasons set forth with respect to paragraph 5 above.  The motion is DENIED, however, as to the second sentence of paragraph 9, stating that "Betty

---

[2] *See* footnote 5 *infra.*

5

Locke was Plant Clerk", since it is based upon personal knowledge, not information and belief.

    2. <u>Rick Wells's Affidavit</u>

      a. <u>Paragraphs 7, 8, and 12</u>. EMF seeks to strike paragraphs 7, 8, and 12 of the Affidavit of Rick Wells, EMF's former Purchasing Manager, pertaining to his receipt of weekly reports on the status of the business, the cause of the Mississippi plant closure, and whether Kipfer ever held a "management" position, because they are conditioned upon Wells's information and belief. For the reasons set forth above with respect to paragraph 5 of Humes's Affidavit, the motion to strike is GRANTED.

      b. <u>Paragraphs 13, 14, and 15</u>. Similarly, the motion to strike the first sentences of paragraphs 13, 14, and 15, concerning whether Kipfer was responsible for estimating, whether she ever held the "Plant Clerk" position, and whether she wrote job descriptions and work instructions, is GRANTED because they too are conditioned upon Wells's information and belief.

    In contrast, the second sentences of those paragraphs—stating that Dave Daugherty was responsible for estimating, that Becky Locke was Plant Clerk, and that Kipfer as the ISO-9000 Coordinator was responsible for ensuring that the managers provided job descriptions and instructions—survive, since they are based upon personal knowledge, rather than information and belief. Wells was the Purchasing Manager for *all* EMF facilities (Wells's Aff. ¶ 2), and "[c]ommon sense dictates that if an affiant is an employee of a company, [he] has personal knowledge of events and circumstances that occurred at the company within [his] sphere of observation." *Westchester Fire Ins. Co. v. Am. Wood Fibers, Inc*., No. 2:03-CV-178-TS, 2006 WL 752584, at *4 (N.D. Ind. Mar. 21, 2006) (quoting *Davis v. Valley Hospitality Servs., LLC*,

372 F. Supp. 2d 641, 653 (M.D. Ga. 2005)).  Therefore, the motion to strike is DENIED with respect to the second sentences of paragraphs 13, 14, and 15.

   3.  <u>Vern Smith's Affidavit</u>

      a.  <u>Paragraph 7</u>.  In this paragraph, Vern Smith, EMF's former Plant Manager, states: "In September and October, 2008, business was slow, but I did not believe that it was long-term and any more than what we normally experienced."  EMF claims that this statement is mere speculation and thus should be stricken.  However, Smith, as Plant Manager, would have personal knowledge that EMF's business was slow at the time, *Westchester Fire*, 2006 WL 752584, at *4, and his statement about the duration or seriousness of the circumstances represent his "own thoughts or intentions, which are within his personal knowledge." *McKay v. Town & Country Cadillac, Inc.*, No. 97 C 2102, 2002 WL 531356, at *7 (N.D. Ill. Apr. 9, 2002) (emphasis omitted).  Accordingly, the motion to strike is DENIED.

      b.  <u>Paragraph 8</u>.  Here, Smith states that he "was not advised of any lay-offs, reductions in staff, or cost-cutting measures at any of [EMF's] facilities."  EMF seeks to strike this statement as irrelevant.  This argument, however, goes more to the weight of this evidence than its admissibility, *see, e.g.*, *Simmons v. W. Suburban Kidney Ctr.*, No. 89 C 8264, 1991 WL 32759, at *3-4 (N.D. Ill. Mar. 6, 1991), and therefore the motion to strike is DENIED.

      c.  <u>Paragraph 10</u>.  In this paragraph, Smith states to his "knowledge and belief" that performance reviews were conducted for Humes nearly every year and that he "would have" forwarded copies of her reviews to the corporate office for placement in her personnel file.  EMF seeks to strike this statement for lack of personal knowledge and because it speaks to what Smith might have done, rather than what actually happened. *See Abdullah*, 2007 WL 636185, at *5

(explaining that affidavits based on facts that the affiant believes are true, but the affiant does not know are true, are improper). EMF's argument is correct, and the motion to strike this evidence is GRANTED.

4. Judy Hicks's Affidavit

a. Paragraph 4. EMF seeks to strike the first sentence of paragraph 4 of the Affidavit of Judy Hicks, a former EMF employee who absorbed Smith's duties as Plant Manager, which states that upon her information and belief Kipfer never held the position of "Plant Clerk" at EMF's Angola facility. The motion to strike is GRANTED for the reasons set forth with respect to paragraph 5 of Humes's Affidavit. The motion is DENIED, however, with respect to the second sentence of paragraph 4, stating that "Betty Locke was Plant Clerk", since Hicks, as Plant Manager, would have personal knowledge of EMF's employees. *See Westchester Fire*, 2006 WL 752584, at *4.

b. Paragraph 5. In this paragraph Hicks states that Kipfer was unable to assume the position of Plant Clerk in October 2008 without extensive training and then identifies who assisted with that training. Again, the motion to strike is DENIED, because Hicks, as Plant Manager, was responsible for supervising Kipfer (Hicks Aff. ¶ 6), and thus would have personal knowledge of her training and performance. *See Westchester Fire*, 2006 WL 752584, at *4.

c. Paragraph 9. Here, Hicks reports that as Plant Manager she was advised of EMF's business conditions and production activity. EMF seeks to strike this statement, asserting that it is irrelevant and hearsay. Of course, EMF's relevancy argument goes more to the weight of this evidence than its admissibility, *see, e.g.*, *Simmons*, 1991 WL 32759, at *3-4, and its hearsay argument is unpersuasive, since this paragraph is not an out-of-court statement offered to prove

the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).  Therefore, the motion to strike is DENIED.

5. Mary Levitz's Affidavit

a. Paragraphs 2 and 3.  In these paragraphs, Mary Levitz, a former employee, reports a conversation she had with Dick Poe, EMF's owner and President, concerning her upcoming hip surgery.[3]  She states that Poe asked her if EMF's health insurance was paying for the surgery and that when she responded that Medicare was covering it, he replied that then it was "okay" for her to take the time off.  EMF asserts that these paragraphs constitute hearsay and are irrelevant.

These paragraphs, however, are admissible as an admission by a party-opponent and thus are non-hearsay.  *See* Fed. R. Civ. P. 801(d)(2); *see, e.g., Haiman v. Vill. of Fox Lake*, 79 F. Supp. 2d 949, 953 (N.D. Ill. 2000).  Furthermore, EMF's relevancy argument goes more to the weight of this evidence than its admissibility.  *See, e.g.*, *Simmons*, 1991 WL 32759, at *3-4. Therefore, the motion to strike is DENIED.

6. Humes's Attorney's Mathematical Analysis of EMF's Income Statements

Finally, EMF seeks to strike Humes's exhibit offering her attorney's mathematical analysis of EMF's income statements.  Indeed, "[s]upporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits.  When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence.'" *Friedel v. City of*

_____

[3] Mr. Poe is now deceased. (Mem. in Supp. of Pl.'s Opp'n 11.)

*Madison*, 832 F.2d 965, 970 (7th Cir. 1987) (quoting *Martz v. Union Labor Life Ins. Co.*, 757

F.2d 135, 138 (7th Cir. 1985)); *see Cox v. Nat'l Football League*, 29 F. Supp. 2d 463, 468 (N.D.

Ill. 1998) (denying motion to strike exhibit setting forth a compilation of raw data where counsel

provided an affidavit that properly authenticated the compilation as a business record); *see also*

*Cent. State, Se. & Sw. Areas Pension Fund v. Transp. Serv. Co.*, No. 00 C 6181, 2009 WL

424145, at *3-6 (N.D. Ill. Feb. 17, 2009) (noting that plaintiff's exhibit consisting of a

compilation of defendant's business records was submitted with an affidavit explaining how the

compilation was created).  Here, Humes's exhibit was not accompanied by an affidavit.

Accordingly, the motion to strike this evidence is GRANTED.

## C.  Conclusion

Accordingly, EMF's motion to strike is GRANTED IN PART and DENIED IN PART.

The Court now turns to EMF's motion for summary judgment.

## III.  FACTUAL AND PROCEDURAL BACKGROUND[4]

EMF is a small business headquartered in Angola, Indiana, with manufacturing facilities

in Indiana, Kentucky, and Mississippi. (Sanders Aff. ¶ 3.)  It manufactures custom wiring

harnesses, fluorescent lampholders, and specialty molded connectors for a variety of industries,

including appliance, vending, refrigeration, lighting, motors, controls, air conditioning, heating,

and automotive. (Sanders Aff. ¶ 3.)

EMF states that it began to experience challenging economic circumstances in 2007, and

it closed one of its Mississippi plants by the end of that year. (Sanders Aff. ¶¶ 5, 6.)  From 2007

---

[4] For summary judgment purposes, the facts are recited in the light most favorable to Humes, the
nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

to 2008, EMF lost $1,000,000 in business, and from 2008 to 2009, an additional $4,000,000 in business. (Sanders Aff. ¶ 6.)  As a result, beginning in 2007, EMF scaled back its manufacturing and office operations by downsizing approximately 120 employees. (Sanders Aff. ¶¶ 5, 7.) Approximately 57% of the downsized employees were under forty years old; conversely, 77% of the employees who remained employed after the downsizing were over forty years old, and 11% of the remaining employees were over sixty years old. (Sanders Aff. ¶ 8.)  EMF explains that it restructured its office staff as a result of the reduction in the number of manufacturing employees it supported and the decline in business. (Sanders Aff. ¶ 7.)

In that vein, on June 27, 2008, Howard Sanders, EMF's Vice President, advised Dick Poe, EMF's owner and President, that unless things changed drastically, EMF may have to go to a four-day work week within the next two weeks because it could not make payroll. (Sanders Supp. Aff. ¶ 9, Ex. A.)  Then, on September 16, 2008, Sanders advised Poe that he needed to terminate his temporary help and go to a four-day "rotated week." (Sanders Supp. Aff. ¶ 10, Ex. B.)  Nevertheless, despite these economic challenges, EMF hired at least twenty-six employees in 2007 and thirty-six employees in 2008. (Identification of Supporting Documents Ex. D (# 0378-86).)

EMF asserts that in response to the challenging economic circumstances it faced in October 2008, Sanders and Poe analyzed EMF's operations and identified areas that could be restructured to save money. (Sanders Supp. Aff. ¶ 11.)  In doing so, EMF claims that it determined that Tami Kipfer, who earned $15.02 per hour and currently served as the ISO-9000 Coordinator and Assistant Quality Manager, could absorb the Plant Clerk job duties of Humes, who earned $13.00 per hour, because Kipfer (1) was proficient in numerous significant areas,

including the ISO-9000 Program[5] and purchasing, and Humes was not; (2) had previous

experience as a Plant Clerk; and (3) had overseen Plant Clerks in her role of ISO-9000

Coordinator. (Sanders Supp. Aff. ¶¶ 12, 13.)  Thus, according to EMF, Sanders and Poe

determined that Kipfer could absorb Humes's Plant Clerk job while continuing to perform her

duties as ISO-9000 Coordinator and Assistant Quality Manager. (Sanders Supp. Aff. ¶ 14.)

Therefore, Humes, who was hired by EMF in January 1983, was terminated on October

10, 2008, "due to a down turn in business." (Sanders Aff. ¶ 11, Ex. B; Humes Dep. 31.)  At the

time of her termination, Humes was sixty-two years old, had a high school diploma, and had

served as the Plant Clerk for the Hamilton facility for ten years, that is, since 1998. (Sanders Aff.

¶ 22; Answer ¶ 25; Humes Dep. 29, 31-33, 34.)  Prior to serving as Plant Clerk, Humes was a

production worker and a Lead Inspector, which required her to conduct quality checks on parts

and oversee activities in the inspection area. (Humes Dep. 31-33; Kipfer Aff. ¶ 3.)  In her job as

Plant Clerk, Humes's job duties included following the instructions of the Plant Manager,

making copies of documents and distributing those documents, computer data entry,

coordinating schedules and time cards, assisting with the inventory process, shoveling sidewalks,

retrieving documents at the request of the corporate office, and helping out in production and

testing. (Humes Dep. 35-36.)  She did not, however, perform any estimating, coordination of

CAD work, purchasing, or ISO-9000 Program leadership. (Humes Dep. 40-41.)

Throughout her tenure at EMF, all of Humes's annual performance reviews were

positive, and she was never issued a disciplinary warning. (Humes Aff. ¶ 3.)  In fact, EMF's

---

[5] EMF began seeking ISO-9000 Program certification in 1995. ISO-9000 certification is a preferred
industry standard which, when achieved, certifies that a business is viable, efficient, and produces a quality product.
(Sanders Supp. Aff. ¶ 3.)

"Employee Termination Report" stated that it would rehire Humes, would recommend her "without reservation", and rated Humes's performance as "good" in all categories. (Sanders Aff. Ex. B.)

Following her discharge, Humes's job duties were absorbed by Kipfer, who was fifty years old, had a high school education, and, like Humes, had worked at EMF since 1983. (Sanders Aff. ¶ 12; Humes Dep. 31-33; Kipfer Aff. ¶ 2; Def.'s Br. In Supp. 6.)  Kipfer had started as a production worker and then, about one year before Humes received the same position on another shift, became a Lead Inspector. (Kipfer Aff. ¶ 3.)  In 1985, however, in order to spend more time with her child, she became a wire cutter, serving in that position for ten years. (Kipfer Aff. ¶ 4.)

In 1997, Kipfer received the position of "Office Clerk".[6] (Identification of Supporting Documents Ex. D4 (# 0279); Humes Dep. 51.)  Less than a year later, Kipfer became the Purchasing Clerk, and was responsible for clerical functions necessary to facilitate the purchasing of materials for all EMF facilities. (Identification of Supporting Documents Ex. D (# 0285); Wells Aff. ¶¶ 9, 10.)  Then, in 1999, Kipfer became the Assistant Quality Control Manager and ISO-9000 Coordinator for the EMF facilities, which required her to guide EMF through the ISO-9000 certification process.[7] (Identification of Supporting Documents Ex. D (# 0257); Sanders Supp. Aff. ¶ 5.)  She received on-the-job training for the ISO-9000 Coordinator

---

[6] EMF contends that Kipfer was promoted to "Plant Clerk" in 1997 (Kipfer Aff. ¶ 6; Def.'s Br. in Supp. 4), rather than "Office Clerk". (Def.'s Br. in Supp. 5; Sanders Supp. Aff. ¶ 12.)  Nonetheless, Humes and several other former employees state another employee, Betty Locke, served as Plant Clerk for the Angola plant (Hicks Aff. ¶ 4; Humes Aff. ¶ 9; Wells Aff. ¶ 14; Humes Dep. 51), and Kipfer's personnel file reflects the title of "Office Clerk" not "Plant Clerk". (Identification of Supporting Docs. Ex. D (# 0279).)

[7] EMF refers to Kipfer as "Quality Manager" and "ISO Management Representative" (Kipfer Aff. ¶¶ 8, 9; Sanders Supp. Aff. ¶ 5), but her annual performance review lists her title as "ISO Coordinator/Assistant QC." (Identification of Supporting Docs. D (# 0257).)

duties and also took some classes at local universities. (Sanders Supp. Aff. ¶ 7; Kipfer Aff. ¶ 9.)

She contends that her work in Quality Control and as the ISO-9000 Coordinator involved

workplace safety, estimating, and coordinating with engineers regarding CAD prints. (Kipfer

Aff. ¶ 11.)  Although Kipfer instructed Humes on the ISO-9000 Program process, telling her

"what things had to be done . . . [and] didn't have to be done" for that Program (Humes Dep. 37),

at no time did Kipfer ever "oversee" or "supervise" Humes. (Humes Aff. ¶ 7.)  In fact, Kipfer

required extensive training in order to assume the position of Plant Clerk following Humes's

termination.[8] (Hicks Aff. ¶ 5.)

Kipfer, in contrast to Humes, received at least seven disciplinary warnings for

absenteeism from 1993 to 2001. (Identification of Supporting Docs Ex. D (# 0280, 0282, 0235,

0232, 0280, 0289-91, 0211, 0296, 0297.)  Similarly, in her 1986, 1991-96, 2000, 2001, and 2006

annual performance reviews, Kipfer was criticized for her absenteeism and was cautioned that

her attendance, reliability, dependability, or punctuality needed improvement. (Identification of

Supporting Docs. D (# 0254-55, 0244-51, 0222-31, 0233-34, 0257-60, 0324-27, 0285-86).)  In

fact, in the following 2001 memo, Poe questioned why Kipfer had not already been terminated

and then limited her Quality Control responsibilities:

> 1.  Tami's file is rife with attendance problems and she really shouldn't be
> working here based upon the number of write-ups she has received in the past 17
> years.  What is the problem here?
>
> 2.  She has this constant Monday no-show problem and is not getting any
> better—even though she has been warned time and again.
>
> 3.  Her excessive and un-improving attendance problem has caused us to

---

[8] In October and November 2009, Kipfer received a verbal and written warning for "disobedience" as a result of using an EMF computer for personal use. (Hicks Aff. ¶ 6.)  About a year later, she was transferred out of the Plant Clerk position. (Hicks Aff. ¶ 8.)

place Tami under supervision of Ernie Hughes, who will take over as Director of Quality Control and Safety and will be looking over all quality programs and procedures Tami had under her wing.

4. Tami will still handle records and some paper work, but will report to Ernie and work with him to achieve EMF's quality goals.

5. This transfer of responsibility should be construed as a final warning to Tami, who has a decades-long problem of poor attendance and no really good excuses as to why it continues.

6. I hope Tami understands the seriousness of her tardiness and will take appropriate action in the future to retain her job. If not, we will have no other choice than to terminate her employment.

(Identification of Supporting Docs. Ex. D (# 0296).) Nevertheless, Kipfer's annual performance reviews were positive in all other categories. (Identification of Supporting Docs. Ex. D (# 0254-55, 0244-51, 0222-31, 0233-34, 0257-60, 0324-27, 0285-86).)

About the time EMF terminated Humes, it also terminated Purchasing Manager Rick Wells, who was fifty-eight years old, and Plant Manager Vern Smith, who was sixty-one years old, "due to a down turn in business."[9] (Sanders Aff. ¶¶ 9, 13, Exs. A, C.) Wells's job duties were absorbed by Buyer David Daughtery, who was forty-one years old, and IT Manager Kane Pyley, who was fifty-one years old. (Sanders Aff. ¶ 10.) Smith's job duties were absorbed by Manager Judy Hicks, who was fifty-two years old, and Sanders, who was sixty-two years old. (Sanders Aff. ¶ 14.) Humes also reports that Lloyd Locke and Dennis Hickman, two other employees about her age or older, were terminated, although she does not provide any more specific information about these employees or the circumstances of their termination.[10] (Humes

---

[9] Smith was offered a position at EMF's Mississippi facility, but he declined. (Sanders Aff. ¶ 15.)

[10] In an apparent effort to link the use of EMF's health insurance to her age discrimination claim, Humes also points out that she and her husband, who had been diagnosed with cancer, filed more than fifty claims for benefits with the EMF health insurance plan in 2008. (Humes Aff. ¶ 2; Humes Dep. 48.) She further reports that

Dep. 105, 118.)

Humes, together with Wells and Smith, filed the instant suit under the ADEA on March 9, 2010, alleging that EMF discriminated against them on the basis of their age when it terminated their employment. (Docket # 1.)  Wells's and Smith's claims were dismissed in response to EMF's first summary judgment motion when they failed to establish a *prima facie* case of age discrimination. (Docket # 40.)  Humes's claim, however, survived because she established a *prima facie* case and EMF then failed to produce a legitimate, non-discriminatory reason for including her in the RIF. (Docket # 40.)  Since EMF filed its first summary judgment motion well in advance of the dispositive motion deadline, the Court granted EMF leave to file a second motion for summary judgment with respect to Humes's claim, which is now before the Court. (Docket # 40, 46.)

## IV.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material

Smith, who had been battling heart problems, filed approximately twelve claims for health benefits that same year; that Wells was terminated shortly after receiving a cancer diagnosis; and that Hickman went in for a surgery and received a message that he was terminated when he returned home. (Humes Dep. 118; Smith Aff. ¶ 2.)

In that same theme, Humes has produced evidence that Mary Levitz, a former employee, discussed with Poe her need to take time off for her upcoming hip surgery, and he asked whether EMF's insurance was paying for it. (Levitz Aff. ¶¶ 2, 3.)  When Levitz responded that the surgery was covered by Medicare, Poe said that as long as EMF did not have to pay for the medical insurance costs related to her surgery, he was okay with her taking the time off. (Levitz Aff. ¶¶ 2, 3.)  Similarly, at some point earlier, Poe told Kipfer that she should lose some weight and "do better" on her health because she was "costing the company a lot of money." (Humes Dep. 47-48.)

dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*, 24 F.3d 918, 920 (7th Cir. 1994).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the

nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must

construe the record in the light most favorable to the nonmoving party and avoid "the temptation

to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot

be used to resolve swearing contests between litigants." *Id.* However, "a party opposing

summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there

is a genuine issue of material fact for trial." *Id.* at 771.

## V. DISCUSSION

### A. The ADEA

The ADEA "prohibits employers from firing workers who are 40 or older on the basis of

their age." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). A plaintiff

suing under the ADEA may establish discrimination directly or indirectly, the latter through the

approach used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Humes

advances her claims solely under the indirect method.

Generally, to establish a *prima facie* case of age discrimination under the indirect method

in a traditional RIF, a plaintiff must show that: (1) she is forty or older, (2) her performance met

the company's legitimate expectations, (3) despite her performance she was subject to an adverse

employment action, and (4) the company treated similarly situated employees outside of the

protected class more favorably. *Martino*, 574 F.3d at 453; *Balderston v. Fairbanks Morse*

*Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003). However, in a RIF "where the

dismissed employee's duties are absorbed by another employee or employees rather than

eliminated," the Seventh Circuit Court of Appeals has applied a modified version of the fourth

prong of the *McDonnell Douglas* test, referring to it as the "mini-RIF variation". *Petts v.

Rockledge Furniture, LLC*, 534 F.3d 715, 725 (7th Cir. 2008). Under this variation, a plaintiff

must establish as the fourth prong of the test that her "duties were absorbed by employees not in

the protected classes." *Merillat*, 470 F.3d at 690; *see Filar v. Bd. of Educ. of the City of Chicago*,

526 F.3d 1054, 1060 (7th Cir. 2008).

If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the

defendant to provide a legitimate, nondiscriminatory reason for the challenged employment

action. *McDonnell Douglas*, 411 U.S. at 802; *Martino*, 574 F.3d at 453. Once the defendant has

done so, the burden shifts back to the plaintiff to show that the proffered reason is merely a

pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Martino*, 574 F.3d at 453.

The focus for a pretext inquiry is "whether the employer's stated reason was honest, not

whether it was accurate, wise, or well-considered." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691,

696 (7th Cir. 2006) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)); *see also*

*Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("[T]he question in a

discrimination case is not whether the employer's stated nondiscriminatory ground for the action

of which the plaintiff is complaining is correct but whether it is the true ground of the

employer's action rather than being a pretext for a decision based on some other, undisclosed

ground."). "An employer's justification may be considered pretextual where the plaintiff

demonstrates that it had no basis in fact, it did not actually motivate the decision to terminate

employment, or it was insufficient to motivate that decision." *Radentz v. Marion Cnty.*, __ F.3d

__, 2011 WL 1237931, at *3 (7th Cir. Apr. 5, 2011). Simply put, pretext is "a deliberate

falsehood." *Forrester*, 453 F.3d at 419.

"Pretext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999); *see also Forrester*, 453 F.3d at 417-18; *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 548 (7th Cir. 2002). Ultimately, the plaintiff proceeding indirectly must also "provide evidence of at least an inference that the real reason for [her] dismissal was discriminatory." *Jackson*, 176 F.3d at 983; *see Brown v. Ill. Dept. of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007); *see also Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) ("[A]n employer who advances a fishy reason takes the risk that disbelief of the reason will support an inference that it is a pretext for discrimination.").

However, "at summary judgment the plaintiff is not required to establish pretext *and* provide evidence of a discriminatory motive by the defendant . . . . This level of proof is only required when a plaintiff's case is submitted to a finder of fact." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005). Rather, in order to survive a motion for summary judgment, the plaintiff "need only produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for [her] dismissal." *Id.*; *see also Forrester*, 453 F.3d at 417; *Alexander v. Wis. Dept. of Health & Family Servs.*, 264 F.3d 673, 682-83 (7th Cir. 2001); *Jackson*, 176 F.3d at 984.

## B. Discussion

Here, the Court has already concluded in its Opinion and Order dated December 1, 2010, that Humes easily establishes a *prima facie* case of age discrimination under the *McDonnell*

*Douglas* indirect method. She was sixty-two years old when EMF terminated her from the Plant Clerk position; additionally, EMF reflected on its Employee Termination Report that her performance was "good" and that it would rehire her and recommend her "without reservation"; and finally, her duties were absorbed by Kipfer, who at fifty years old was "substantially younger" than Humes.[11]

Since Humes successfully establishes a *prima facie* case, the burden of production then shifts to EMF to provide a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802; *Martino*, 574 F.3d at 453. EMF states that it terminated Humes as part of a company-wide RIF "due to a down turn in business." (Sanders Aff. Ex. B.) Of course, generally speaking, "[a]n economic downturn in the industry is a legitimate, non-discriminatory reason for a reduction in force." *Owens v. Teleperformance USA*, No. 04 C 3645, 2009 WL 3719411, at *6 (N.D. Ill. Nov. 4, 2009) (citing *Ritter v. Hill'N Dale Farm, Inc*., 231 F.3d 1039, 1043-44 (7th Cir. 2000)).

Moreover, EMF now explains that it included Humes, rather than Kipfer, in the RIF because Kipfer had previous experience as a Plant Clerk, experience overseeing Plant Clerks in her role as ISO-9000 Coordinator, and in general, a superior skill set. As a result, EMF has satisfied its burden of production to provide a legitimate, nondiscriminatory reasons for including Humes in the RIF. *See Petts*, 534 F.3d at 726 (finding that defendant had offered a legitimate reason for plaintiff's discharge where it explained why it chose to eliminate plaintiff

---

[11] "In the age discrimination context, the fact that a plaintiff is replaced by someone 'substantially younger' is a reliable indicator of age discrimination." *Balderston*, 328 F.3d at 321-22. "The Seventh Circuit has defined 'substantially younger' as generally ten years younger." *Id.*; *see also Tubergen v. St. Vincent Hosp. & Health Care Ctr.*, 517 F.3d 470, 475 n.4 (7th Cir. 2008) ("Under the ADEA, in the case of younger employees that fall above the age of forty, the age difference must be ten years or greater in order to be presumptively substantial.").

in the RIF rather than another employee); *Filar*, 526 F.3d at 1063 (same); *Merillat*, 470 F.3d at 692-93 (same); *Ritter*, 231 F.3d at 1043-44 (same); *Miller v. Borden, Inc.*, 168 F.3d 308, 314 (7th Cir. 1999) (same); *Weide v. Swiss Re Life & Health Am., Inc.*, No. 1:07 CV 328, 2010 WL 3927591, at *7 (N.D. Ind. Oct. 1, 2010) ("The Seventh Circuit has . . . held that an employer's statement that it chose to terminate a plaintiff and retain another employee who possessed the company's desired skill set qualifies as an articulation of a legitimate non-discriminatory rationale." (citing *Merillat*, 470 F.3d at 693)).

Accordingly, the burden shifts back to Humes to show that EMF's proffered reason is merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Martino*, 574 F.3d at 453. "Even if the reduction was otherwise bona fide, a plaintiff may show pretext by demonstrating that the specific reasons given for including her in the reduction were pretextual." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012-13 (7th Cir. 2000); *see Graber v. Mad Brewer, Inc.*, __ F. Supp. 2d __, 2011 WL 759746, at *19 (N.D. Ind. Feb. 24, 2011) ("To show that the employer's reason is unworthy of credence, a plaintiff 'must *specifically* refute the facts which allegedly support the employer's proffered reasons.'" (quoting *Mills v. First Fed. Savs. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir. 1996)) (emphasis in *Mills*)). As explained earlier, "a factfinder can 'infer the ultimate fact of discrimination from the falsity of the employer's explanation.'" *Graber*, 2011 WL 759746, at *19 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).

In an effort to establish pretext, Humes first attempts to refute the "reason for separation" recorded on Humes's Employee Termination Report—that EMF had experienced a "down turn in business". (Sanders Aff. Ex. A.) In doing so, Humes nitpicks EMF's income statements,

selectively setting forth certain variables (such as gross sales and payroll costs) and calculating their percentile changes from 2007 to 2009. (Mem. in Supp. of Pl.'s Opp'n 2-4.) She also produces the Affidavits of several former employees who, in essence, claim that while business was slow at the time, it did not appear to be a major decrease. (*See* Hicks Aff. ¶¶ 9, 10; Smith Aff. ¶¶ 5, 7, 8; Wells Aff. ¶¶ 3, 5, 6, 8.)

Humes's effort to specifically refute EMF's view that it had experienced a "down turn in business" is unpersuasive. The record undisputedly reveals that in 2007, EMF lost $1,000,000 in business and was forced to close one of its plants in Mississippi. (Sanders Aff. ¶ 6.) In June 2008, Sanders advised Poe that EMF may have to go to a four-day work week because it could not make payroll. (Sanders Supp. Aff. ¶ 9, Ex. A.) Similarly, in September 2008, Sanders told Poe that he needed to terminate his temporary help and go to a four-day work week. (Sanders Supp. Aff. ¶ 10.) EMF's decision to reduce its workforce "appears to be no more than a legitimate business judgment which this [C]ourt will not second guess." *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 233 (7th Cir. 1992); *see Harrell v. Potter & Brumfield, Div. of AMF, Inc.*, Civ. A. No. EV 82-299-C, 1986 WL 459, at *4 (S.D. Ind. Aug. 29, 1986) ("Unless the reduction in force can be proven an outright sham or to have a strongly disparate effect on employees age 40-70, it is presumed to be a valid and proper exercise of business discretion."). On this record, Humes offers no evidence that would allow a reasonable juror to conclude that EMF's assertion that it had experienced a "down turn in business" in October 2008 was mere pretext.

Next, Humes argues that a rational juror could reasonably infer that EMF's proffered reason for retaining Kipfer, rather than her, in the mini RIF—a purported superior skill set, previous experience as a Plant Clerk, and experience overseeing Plant Clerks in the ISO-9000

Coordinator role—is a pretext for discrimination. Humes's assertions, however, are ultimately unconvincing, as on this record no reasonable juror could infer that EMF's decision to retain Kipfer over Humes was a pretext for age discrimination.

To explain, while Humes attempts to refute Kipfer's claimed experience in several areas such as estimating, CAD coordination, and as a Plant Clerk, there is no dispute on this record that Kipfer had skills in the ISO-9000 Program that Humes did not. That is, Humes, who had never conducted any ISO-9000 training, concedes that Kipfer was the "head" of the ISO-9000 Program. (Humes Dep. 37, 42, 51.) The record reveals that the ISO-9000 Program was important to EMF, and that since 1999 EMF had invested significant time and money in Kipfer to oversee the certification process, including on-the-job training and attending courses at local universities. (Sanders Supp. Aff. ¶¶ 4, 5.)

Similarly, there is no dispute on this record that Kipfer had worked in purchasing for several years, experience that Humes lacked. (Humes Dep. 40-41.) Thus, even if it could be said that EMF inflated Kipfer's purported experience in estimating, CAD coordination, and as a Plant Clerk, it clearly has established that Kipfer was proficient in certain critical skill areas that were altogether missing from Humes's resume. *See Radentz*, 2011 WL 1237931, at *3 (stating that an employer's justification for termination may be considered pretextual where the plaintiff demonstrates that it had "no basis in fact"); *Brown*, 499 F.3d at 683 ("With indirect evidence, the plaintiff must show that the employer's reason . . . is factually baseless.").

Nor has Humes produced evidence upon which a reasonable juror could infer that Kipfer's skill set, which included the ISO-9000 coordination and purchasing experience, "did not actually motivate" or "was insufficient to motivate" the decision to retain her over Humes, or

that EMF's cited reasons were "dishonest". *See Radentz*, 2011 WL 1237931, at *3. In that vein, Humes attempts to make much of the fact that in contrast to EMF's claim that Kipfer was a Plant Clerk in 1997, a contemporaneous personnel document refers to her as an "Office Clerk", and several former employees recall that another employee, Betty Locke, actually served as Plant Clerk. Humes also disputes EMF's claim that Kipfer oversaw Plant Clerks in her role as ISO-9000 Coordinator, asserting that at no time during her employment did Kipfer ever "oversee" or "supervise" her. (Humes Aff. ¶ 7.) Humes also points to Kipfer's long-standing absenteeism problem in an effort to discredit Sanders's and Poe's decision to retain Kipfer over her.

Humes's attempt to specifically refute EMF's reasons for retaining Kipfer rather than her, however, is not particularly compelling. *See Graber*, 2011 WL 759746, at *19 ("To show that the employer's reason is unworthy of credence, a plaintiff 'must *specifically* refute the facts which allegedly support the employer's proffered reasons.'" (quoting *Mills*, 83 F.3d at 845) (emphasis in *Mills*)). First, Humes suggested in her own deposition that certain job titles at EMF were fairly interchangeable and "kind of meaningless" (Humes Dep. 87), thus negating the significance of the skirmish over Kipfer's 1997 job title. And, although Humes claims on the one hand that Kipfer never supervised or oversaw her work, she at the same time concedes that Kipfer was the "head" of the ISO-9000 Program and in that context, told her "what things had to be done . . . [and] didn't have to be done" (Humes Aff. ¶ 7; Humes Dep. 37), suggesting that Kipfer provided at least some direct supervision during their employment at EMF.

Moreover, EMF emphasizes that its decision to retain Kipfer over Humes was based upon their respective skill sets, *not* their disciplinary records or attendance history. Indeed, the Seventh Circuit Court of Appeals has instructed that "to squarely rebut the articulated reason for

[her] discharge," *Plair v. E.J. Brach & Sons, Inc*., 105 F.3d 343, 349 (7th Cir. 1997), the plaintiff "must focus on the specific reasons advanced by the defendant to support the discharge." *Smith v. Gen. Scanning, Inc*., 876 F.2d 1315, 1319 (7th Cir. 1989). "For example, an employee discharged for poor attendance does not prove pretext by arguing that no other employee did the job better. He only proves pretext by establishing that his attendance was good enough to keep his job." *Plair*, 105 F.3d at 349; *see also Riley v. Lutheran Gen. Hosp.*, No. 97 C 3332, 1999 WL 184163, at *12 (N.D. Ill. Mar. 25, 1999); *Campbell v. Fasco Indus., Inc*., 861 F. Supp. 1385, 1399-1400 (N.D. Ill. 1994). Moreover, and importantly, Kipfer's attendance record was a bit of ancient history by the time of the mini-RIF, as she had not been disciplined or counseled about her attendance in the two years immediately preceding Humes's October 2008 termination. *See generally Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993) ("The critical issue is whether she was performing well in her job at the time of [the] termination.").

In any event, even if Poe and Sanders, the decision makers in the mini-RIF, were mistaken about whether Kipfer had previous experience as a Plant Clerk or in overseeing Plant Clerks in her role as ISO-9000 Coordinator, that is insufficient to establish pretext. *See, e.g.*, *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 622 (7th Cir. 2001) (granting summary judgment in age discrimination case where plaintiff failed to present any evidence to contradict the defendant's "honest, albeit possibly mistaken belief" for not promoting her); *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) ("Even if the reasons for [plaintiff's termination] were mistaken, ill considered or foolish, so long as [defendant] honestly believed those reasons, pretext has not been shown."); *Courtney v. Biosound, Inc*., 42 F.3d 414, 425 (7th Cir. 1994) (acknowledging that plaintiff's evidence could raise an inference that defendant was mistaken in

its assessment of her skills, in comparison to another candidate, "[b]ut that is not enough").

Rather, Humes "must present evidence to suggest not that [EMF] was mistaken in [terminating] her but that it was lying in order to cover up the true reason" for the decision—her age. *Jordan*, 205 F.3d at 343; *see Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 557 (7th Cir. 2001) ("[W]e deal with small gradations, with an employer's subjective comparison of one employee to another, and it is incumbent upon us to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives."); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001) ("A 'pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." (citation omitted)). Humes, however, has failed to point to evidence upon which a reasonable juror could infer that EMF was lying about its reasons for terminating her.

Although Humes suggests in her deposition that she believes several other former employees were also terminated because of their age (Wells, Smith, Locke, and Hickman) (Humes Dep. 117-18), she does not develop this line of argument in response to EMF's summary judgment motion or attempt to refute EMF's statistics indicating that the majority of the downsized employees were under forty years old, and conversely, that the majority of retained employees were over forty years old. *See generally Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (explaining that undeveloped arguments are waived); *Laborer's Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (emphasizing that arguments not presented in response to summary judgment motions are deemed waived). "Plaintiffs must do more than merely point to [age] and proclaim: 'Aha! Discrimination.'" *Hague v. Thompson Distrib.* Co.,

436 F.3d 816, 829 (7th Cir. 2006). And of course, this Court has already concluded that Wells and Smith were unable to establish a *prima facie* case of age discrimination in response to EMF's first motion for summary judgment.

Instead, Humes contends that a reasonable jury could infer pretext for age discrimination because EMF terminated her after she and her husband filed more than fifty claims for health insurance benefits in 2008 on EMF's purportedly self-insured plan. (Mem. in Supp. of Pl.'s Opp'n 8; Humes Dep. 47-48.) Humes's argument is a non-starter for several reasons, the most obvious being that EMF has produced evidence indicating that it "is *not* a self-insured company", and "does *not* receive any reports that identify which employees use the Cigna insurance or the associated per-employee cost of the medical insurance." (Sanders Second Supplemental Aff. ¶¶ 3, 6 (emphasis added).) EMF states that such documents remain with its insurer, Cigna Insurance Company, and thus EMF "has no knowledge of how often employees use their medical insurance or how much each employee has charged to his or her medical insurance". (Sanders Second Supplemental Aff. ¶ 6.) Thus, there is simply no evidence that Sanders and Poe were aware of Humes's claims-filing history when EMF decided to terminate her.

Not to be deterred, Humes also rather cryptically (or speculatively) suggests that, even if EMF was unaware of her claims-filing history, Sanders and Poe were able to draw some correlation between older workers and the increased cost of health care benefits to EMF, and thus employed "a subtle method of 'weeding' out the older, more prolific users of the company's insurance plan". (Mem. in Supp. of Pl.'s Opp'n 11); *cf. Hazen Paper*, 507 U.S. at 613 ("Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent, .

. . but in the sense that the employer may suppose a correlation between the two factors and act accordingly."). Humes's argument, however, is nothing more than naked speculation, devoid of any probative facts. Although the record supports an inference, perhaps, that Poe was concerned about the cost of health care benefits, Humes has failed to produce *any* evidence upon which a reasonable juror could infer that as a proxy for age he discriminated against, or terminated, employees who used EMF's health care benefits.[12] *See Harney v. Speedway SuperAm., LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Summary judgment is the 'put up or shut up' moment in a lawsuit." (citation omitted)).

In sum, "courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decision." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Here, Humes has raised only speculation, but no genuine issue of material fact, about whether EMF's explanation for terminating her in the mini-RIF—that it believed Kipfer had the skills to absorb Humes's job but that Humes did not have the skills to absorb Kipfer's job—was a pretext for age discrimination. Accordingly, EMF is entitled to judgment as a matter of law.

## VI. CONCLUSION

For the reasons given herein, Defendant's motion for summary judgment (Docket # 46) is

---

[12] Generally speaking, "an employer may base an employment decision upon health care costs without implicating age considerations or violating the ADEA." *Caponigro v. Navistar Int'l Transp. Corp.*, No. 93 C 0647, 1995 WL 238655, at *8 (N.D. Ill. Apr. 20, 1995) (citing *Hazen Paper*, 507 U.S. 604). "[L]ike wages, pensions and managerial considerations, medical costs are often correlated with age but are not necessarily closely correlated with age." *Id.*; *Coleman v. Navistar Int'l Transp. Corp.*, No. 93 647, 1996 WL 426229, at *20 (N.D. Ill. July 26, 1996); *see also E.E.O.C. v. Francis W. Parker Sch.*, 41 F.3d 1073, 1077 (7th Cir. 1994) ("[Employment] decisions based on criteria which merely tend to affect workers over the age of forty more adversely than workers under forty are not prohibited."); *Cupples v. AmSan, LLC d/b/a Maint. Supply Co.*, No. 3:04-CV-574-W, 2007 WL 1075178, at *7 (W.D.N.C. Mar. 30, 2007) ("[D]iscrimination on the basis of the *cost* of employing an older worker alone does not establish a violation of the ADEA." (emphasis in original)). "[The ADEA] requires the employer to ignore an employee's age (absent a statutory exemption or defense); it does not specify *further* characteristics that an employer must also ignore." *Hazen Paper*, 507 U.S. at 612 (emphasis in original).

GRANTED, and its motion to strike (Docket # 55) is GRANTED IN PART and DENIED IN

PART.  The Clerk is DIRECTED to enter final judgment in favor of Defendant and against

Plaintiffs Rick Wells, Judy Humes, and Vern Smith.

SO ORDERED.

Enter for this 3rd day of June, 2011.

/S/ Roger B. Cosbey_____
Roger B. Cosbey,
United States Magistrate Judge